Please be seated. Good morning, ladies and gentlemen. We have four cases on the calendar this morning. Three patent cases and a bid protest from the Court of Federal Claims. One of the patent cases is submitted on the briefs and will not be argued. The first case is CBT FLINT PARTNERS v. RETURN PATH in Siscoe-Ironport, 2010-12-02. Mr. Josepher. Good morning. The basic question before the Court is whether a typographical error makes a claim indefinite even when the claim's intended scope and meaning are clear. And as a matter of both first principles and precedent, the answer is no. Under first principles, the definite misrequirement exists to provide the public with notice of the claim scope of what's claimed and what's not, what the public can do and what it cannot. And as long as the claim's scope and substantive meaning are clear, that notice function is fully satisfied, such that there is no basis for depriving the patentee of its end of the patent bargain or for determining that the presumption of patent validity has been overcome. Mr. Josepher, it's clear from Claim 13 that there was a typographical error of some sort. There was a mistake of some sort because the phrase programmed to detect, analyze just doesn't make any sense. But the question I have is how do we know that the typographical error was omitting the word and rather than adding the word detect? It seems to me both of those possibilities are reasonable and internally inconsistent within the claim and consistent with the specification. Well, but taking that as a given, our key point here is that even if there is more than one way to word a correction, the claim still has the same, the overall claim in context still has the same overall scope and meaning under either of those wordings. Is that true? Because if the word detect is there, detect and analyze, then those two functions would be attributed to the computer that's claimed. If the word detect is not there, then arguably some other piece of apparatus could perform the detecting. Right. In the context of this claim, that's not the case, I'd say, for two separate reasons. The first is that the claim here refers to a computer programmed to detect, analyze the email to make the determination. For the computer to analyze the email, it's just necessary that the computer that's doing the analysis has also detected the email because you can't analyze something without being aware of its presence in front of you. For example, this court could not determine how to decide this case without analyzing the briefs and record, and there's no way... Well, are you suggesting then, in response to Judge Land's question, that even if something else detects the email the first time, that the computer nonetheless redetects it... Exactly. ...before it does the analysis? Exactly. The detection is just an inherent component of any analysis, regardless of what went before, including previous detections? Is that your... Yeah, I think there could be lots of detections. For example, the system that sends the email would detect the email. It knows it's aware of the email because it's sending it. The transmission system would detect it and transmitting it. The receiving system would detect it and receiving it. Right. But when you get to this computer that's doing this analysis of this email, there's no way for that computer to analyze the email without being aware of its existence, without detecting it. I interrupted you. You had a second point, and I interrupted you in the middle of the first. So you've got a second point in answer to Judge Land's question. Yes, and your question did a very good job of making my first point for me, and I appreciate that. Our second point is that, in context, the patent here describes... The only thing the patent recites, this claim, is an apparatus that is programmed to perform all of the relevant functions. And there's nothing in the claim language that suggests that anything else could perform any part of the invention. And there's nothing in the specification that discloses the possibility of anything else performing any part of the relevant invention. So as a matter of both the clear claim language and the disclosures of the specification, we'd say, for that second and independent reason, that all of the relevant functions are necessarily performed by the computer program to do them. That's how the claim and specification are set up. Is your sense of the Essex rule, the Novo industry rule, that there can be only one reasonable interpretation appropriate in order for a district court to make a correction? Or is your sense that if there is an evident, most reasonable interpretation, that that's enough? We're willing to say that there has to be only one reasonable interpretation of the claim scope and claim language. I mean, here there is. And that's significant, because when there is, it's surely definite. Because if there's not a typo, right, this court was held, the claims don't even have to be clear to be definite. A claim can be ambiguous so long as it's not insolubly ambiguous, so long as it's not amenable to construction. And that's enough to serve the public notice function of indefiniteness. Now, when a claim actually is clear, when it has only one reasonable claim scope, one reasonable interpretation, it should follow a fortiori that it's certainly definite. Is it your view that if we agree with you, the question of costs and attorney fees are moot? Yes, because there would no longer be a final judgment. And so with costs, it's easy. I mean, if we were to win on remand, we'd be the ones getting costs. And with attorney's fees, it's the same point for a few reasons. One is that attorney's fees are typically awarded at the end of a case for final judgment. Interlocutory awards are extremely rare and are certainly not mandated. At best, it would be discretionary. Also, if we end up winning the case, there's going to be a serious question as to whether they can really say that they were prevailing parties for purposes of Section 285. And at a minimum, that's something the district court would need to consider at that time. And what if we don't agree with you? If you don't agree with us on indefiniteness and you need to move on to the other issues, certainly. With respect to the costs issue, the defendant's request for discovery costs generally, either electronic or paper discovery costs, would fundamentally transform the treatment of litigation costs in our country. Because under the well-settled American rule, each party typically bears its own litigation costs, whether it prevails or not. Congress intended the Taxation of Cost Statute to be a very narrow exception to that general rule. And for that reason, it specified that only six relatively minor categories of costs are taxable. The Making Copies provision has already been authoritatively construed to refer only to the costs of actually duplicating documents. Do you think this issue is an Eleventh Circuit issue, or is it a Federal Circuit issue, as you would read? Which law would govern our determination of cost question? And on this point, the basic point of Allen v. U.S. Steel Corp. is that actual duplicating costs are taxable. The surrounding costs of identifying, collecting, organizing, and ultimately producing documents, which is the issue here, are not. And that's the same symmetry for both paper and electronic documents. Whether it's paper or electronic, you have to first find it, identify it, gather it, then copy it, then produce it, and it's the actual copying for either set of documents that is taxable. Congress removed any doubt on that point in 2008 when it amended the Cost Statute. The Cost Statute used to authorize taxing the costs of making copies of paper. In 2008, in order to update the statute, Congress amended the statute to authorize taxing the costs of making copies of any materials. So Congress chose to bring in non-paper materials by adding them to the Making Costs, the actual duplication provision. And that's then a clear, spot-on determination by Congress that the way to update the statute for electronic materials is to treat them the same as paper materials. And that was a necessary determination because otherwise, if you start taxing any type of discovery generally, be it electronic or paper, the taxation of Cost Statute, which is supposed to be a very narrow exception to the general rule that everyone bears their own costs, would be blown wide open. Here, apart from the costs at issue, there are about $25,000 in taxable costs that everyone agrees are taxable. They're not looking for an additional quarter million on top of that for this type of thing. There are other cases where parties have sought $1.5 million, I think $4.5 million in discovery costs. And that would just fundamentally change the statute contrary to the very plain statutory language, especially as recently amended by Congress. What's your comment with respect to attorney fees? Certainly. First and foremost, the award of fees is within the sound discretion of the district court, and fee awards are supposed to be rare. Here, the district court correctly articulated all of the governing legal standards, carefully considered all of the relevant evidence, and then drew a finding of fact that there was not clear and convincing evidence of subjective bad faith that was well within the court's considerable discretion. With respect to the different bases they've asserted, it's accepted they're seeking fees for supposedly frivolous litigation. This court has now held six times, including in two recent decisions we cited in the 28-J letter, that subjective bad faith and objective baselessness are both required. That's a well-established requirement now, and the court made its finding on that point by considering all of the evidence, not just the evidence that the defendants like to emphasize. And again, that weighing of evidence is just solidly within the court's discretion. With respect to asserted discovery misconduct as a basis for fees, the district court already did that. The district court did award sanctions for what it viewed as discovery misconduct, and no one is appealing that. We recognize it's discretionary. They're not appealing the amount of fees awarded for that. And the court certainly under no obligation to decide at the end of the case to award more fees on that basis, as this court held in the Propat against Arpost case. And then finally, to the extent they're looking to Section 1927 as yet another basis for fees, Section 1927 is not an all-purpose end run around the requirements of Section 285. It addresses a much more narrow circumstance, which is, for Section 1927, it doesn't matter if the actual underlying litigation was even frivolous. What 1927 adds is it says, given the litigations occurring, has counsel vexatiously multiplied the proceedings in some way? And here, there's nothing you could point to as any kind of multiplication of proceedings other than perhaps the discovery issues, which again, the court has already dealt with. Do you see any internal inconsistencies in our precedent on the concept of having a balanced position on when a case is exceptional, looking at it from the plaintiff's perspective versus the defendant's perspective? We have cases that now, I think, make clear that there is both an objective standard and a subjective standard. And the objective standard seemingly is the same. The question is, what about the subjective standard? Is there some internal inconsistency in our precedent on this? No, there's no inconsistency when you're making an apples-to-apples comparison. By which I mean, if you're looking at maintaining meritless litigation as a potential basis for fees, that can apply to patentees and alleged infringers, to plaintiffs and defendants, because people can maintain meritless defenses or meritless declaratory judgment actions, whatever it might be. And it's the same standard. If the basis for fees is meritless litigation, it's the same subjective plus objective standard. If the basis for fees is discovery abuse, same standard for everyone. The only way they can point to something different is by making an apples-to-oranges comparison to, for example, inequitable conduct before the patent office, which is its own substantive standard, which, of course, is different. But as long as you're making apples-to-apples comparisons, there's no inconsistency at all. Do you see an inconsistency on the requirement that something is knowing versus something that should have been known? Well, the question is, what's the something? If the something we're talking about is maintaining baseless litigation, it's the same subjective plus objective for everyone. There's no difference at all. I agree that you can have different standards for willful infringement and for inequitable conduct, which are primary conduct, not litigation conduct. But those are also just different. If you have apples-to-oranges comparisons, there's nothing inherently wrong about treating apples differently from oranges.  The only thing the court really needs to hold today, as Judge Lori's question pointed out, is that the indefiniteness requirement looks to public notice of claim scope and meaning, not of specific wording. With respect to the 550 patent here, CBT prevailed on all of its claim constructions on that patent. That patent covers all of the accused products. And at this point, CBT is entitled to move ahead, undermanned, with a suit on the 550 patent. Just real quickly, the best 11th Circuit case on costs, you think, is that McDaniel? It seems to me there's not a whole lot of 11th Circuit precedent on this. No. With respect to the cost question of what does making copies mean, that's Allen v. U.S. Steel Corporation, which is an old 5th Circuit case that's binding in the 11th Circuit because it's an old 5th Circuit case. Yeah, the old 5th Allen decision is the binding one. That's fine. Understood. And I would also say, I don't think with respect to written discovery there's any dispute, but only actual duplication costs are taxable. We're aware of no contrary authority. I don't think that's even disputed. Thank you. Thank you, Mr. Joseph. We'll give you three minutes of rebuttal time.  Mr. Jameson. Good morning, Your Honors. May it please the Court. With respect to the invalidity of Claim 13 of the 550 patent, as Mr. Joseph has pointed out, there is absolutely no dispute here that there is a typographical error. 35 U.S.C. 255 makes clear and expressed terms that when there is a typographical error It's really not a typographical error. A typographical error is when you put an N instead of an M. This is arguably an extra word. But don't they in context mean the same thing? Your Honor, the fact that there's actually an extra word is precisely why you need to go back to the Patent Office for the Patent Office to analyze the claim in light of the possible addition of a new word to evaluate whether or not new matter is being added to the patent or whether or not reexamination proceedings need to be undertaken. Would there be a difference in meaning? Your Honor, we believe there absolutely would be a difference in meaning. And what I find interesting about Appellate Counsel's argument on appeal is that it is in fact different than what their trial counsel argued to the District Court. If you look at our red brief at page 41, footnote 10, we point out that they argued to the District Court that if the claim were corrected to be detect only as opposed to detect and analyze that the claim would be nonsensical and inoperative. So they make that argument to the District Court. They now come in front of you on appeal and the answer is, Your Honors, we really don't care how you correct it. We think detect and analyze is probably the best way to correct it, but whether it's detect or whether it's just analyze or whether it's detect and analyze, we think that the claim all has the same scope. And a couple of comments on that, Your Honor, is when you look at the cases where claim correction has actually come into play, like the Essex case, there has been, and Judge Lynn picking up on your question, there has been one and only one possible correction, one reasonable correction. Here we are debating about three possible corrections to the claim and whether or not the given correction could impact the scope of the claim. Well, is it really a question of whether there are three possible corrections or three possible meanings? Because you could have, for example, suppose a claim has a run-on sentence that obviously was intended to have some kind of break in the middle. Now, you could say that the break could be a semicolon or the break could be a period and there may be absolutely no way to know which of those to adopt, but they would have the same meaning. So that would be the kind of thing it would seem to me you'd say, well, it doesn't matter whether there are two possible ways of fixing the problem as long as it has the same meaning. Isn't that really what we should be looking at, the change in meaning? Your Honor, under this Court's jurisprudence and under the statute 255, that's when you would go back to the Patent Office, tell the Patent Office there needs to be a semicolon here or there needs to be a period here, and the Patent Office, the Director, would have the right to issue a notice of correction. So you're saying that the Court could not make that change? The Court can only make a change under this Court's jurisprudence if there is only one and only one reasonable correction to the claim. So if we said it was either a semicolon or a period but we have no way of discerning, even though it makes no difference in the reading, in the meaning of the claim, we would be out of the box? Under the Court's jurisprudence, you would be out of the box, and this should go back to the Patent Office for a notice of correction to be issued. That is exactly correct. With respect to the public notice issue, I guess it's public notice and perhaps public policy, the argument goes by the appellants that it's really not fair that we're getting poured out of court because there is a typographical error that was not fixed in the claim. And I would respectfully counter that the statute tells us, read the claim when it's issued. If you see any problems with the claim, go fix it before you assert it in federal court because if you don't do that, the defendant has no idea on the front end what we're even litigating about. And then once we get into court, the court doesn't know what we're litigating about. And that is precisely why this Court stated in the Southwest software case, we don't think it's too much to ask of a patentee to read the patent when it's issued to see if there are any errors that, by statute, need to go back to the Patent Office and get it fixed. And the other thing, and another distinction in this case from a traditional indefiniteness case where once a court finds a claim indefinite, it's indefinite for all time, the only thing that has happened here is the court has found that Claim 13, as it currently exists with respect to this case, is invalid because they didn't fix the claim. CBT absolutely has the right to go back to the Patent Office today, get the claim fixed, and on a prospective basis, if there's somebody else out in the world that they believe infringes Claim 13, if they can get it fixed, they have the right to go after them. So this claim has not been killed for all time if the Patent Office ultimately corrects it. So under the statutory give and take, if you will, there was a mechanism for getting this fixed, and they chose not to do it prior to bringing this claim in federal court. The other thing that I would call attention to... Did they choose or was it inadvertent? Your Honor, I have no idea. In other words, we don't know whether they chose. Here's what we do know. We do know that in connection with the exceptional case motion, that the lead District Court counsel filed a declaration talking about the pre-filing investigation that they did and said that as part of the pre-filing investigation, they knew that the claim had a drafting error. So we do know that prior to bringing this in federal court, they were aware of the drafting error, and for whatever reason, they chose not to fix it prior to bringing the claim. And they had terrible testimony from that patent attorney. And they had terrible testimony from the patent attorney. And since you raised that, Your Honor, very briefly, this is not a situation where the District Court or us are relying on a patent attorney or a prosecuting attorney to explain the meaning of a claim, to interpret the claim for the District Court. It was a very simple question. Mr. Prosecuting Attorney, what's the claim supposed to say? Not asking you what does it mean, what's the claim say? And I don't believe this Court's jurisprudence has said that that's an inappropriate question to ask of a prosecuting attorney. What's it say? Is it detect? Is it analyze? Is it detect and analyze? And over and beyond that, the District Court made... That's what we're going to have to analyze and detect. Correct. And finally... What relevance is the patent attorney's testimony? The truth is, Your Honor, it's... Other than idle curiosity. It's actually a third reason why the District Court found that the claim was invalid. I mean, the District Court's findings... Is that a proper basis on which to make that judgment? It would be an alternative basis, Your Honor. And I think it would be. Because, again, I don't believe this Court's jurisprudence states that it's inappropriate to ask a prosecuting attorney, what's the claim supposed to say? Not, what does the claim mean? What's the claim supposed to say in the first instance? The claim is interpreted based on, what, his expert opinion? Yeah. Again, Judge Lynn... Is it a question of fact? Again, Judge Lynn, it's not, Mr. Prosecuting Attorney, Mr. Santos, what do you think this claim means? When you were prosecuting it, did you want the claim to say, detect? Did you want the claim to say, analyze? Did you want the claim to say, detect and analyze? And his answer was, I don't know. It could be any one of the three. Then when you get to the question of, what does the claim mean? Asking him that question about what the claim means, that's what would be inappropriate under the Court's jurisprudence. To the extent there's any doubts in your mind about this issue, I would urge the Court to look at Claim 1, Claim 7, Claim 13, and Claim 14 of this patent. Because when you do, unlike the Essex case, where the Supreme Court was dealing with a claim, an issue where there was five claims that all said the same thing, one of them was missing one word, we don't have that in this case. What we have is we have Claim 1 that uses the word detect. We have another independent Claim 14 that doesn't use either word. And then we've got Claim 13 that uses detect, analyze. So there's no guidance in the claims to give you a road map as to what the right answer should be. Except a suggestion that there isn't much of a difference. There's not much of a difference. But that's actually what we litigate patent cases about. And as we know, patent cases all boil down to what do words mean. And we set forth in our red brief some various possible interpretations that ultimately could lead to dramatic outcomes in this case. What you're saying is we're arguing about something that doesn't make much difference. Your Honor, it absolutely could make substantial difference. For example, let's go back to what they said to the district court, which is if we correct this only to mean detect, then the claim is nonsensical and inoperative. It's invalid. So by their own words to the district court, it could make a substantial difference. We'd like to turn to the exceptional case issue. Judge Lind, you asked a question about is there daylight in our decisions? And I respectfully would suggest that there is. If you look at the LTCH case, which is controlling precedent until overturned by an en banc decision of this court, exceptional case, the touchstone is bad faith. And under LTCH, bad faith could be found in recklessness, gross negligence, wrongful intent. Your Honors, the district court found every single one of those. In LTCH, the words subjective bad faith, that is not part of the test. And so if this court were to decide this case under LTCH, which is controlling precedent, I would respectfully submit it is a different outcome than if you apply the subjective bad faith prong that is found in the court's decision in Brooks. And to follow up on the daylight issue, Judge Lind, I think the Ivor case that just recently came down from the Federal Circuit that you were actually on the panel, at page 8 of this opinion, and this is from the website at page 8 of the opinion, the Federal Circuit found that the plaintiff's case must have no objective foundation, and then you went on to hold, and the plaintiff must actually know this. That sounds like smoking gun type evidence to me. We have the burden of proving the plaintiff must actually know this. But in this decision, y'all reached the conclusion that the objective prong, it's identical to the objective prong of the Seagate test on willful infringement. And when you quote from Seagate, what you say with respect to the subjective element under Seagate, you state that the objectively defined risk, dot, dot, dot, was either known or so obvious that it should have been known to the accused infringer. So to the extent there is supposed to be an even playing field, and we're going to look at Seagate for guidance, Seagate is teaching us that there has to be an objective aspect to looking at the subjective bad faith prong. Mr. Jamison, you wanted to save a little time for rebuttal on that issue, the cross appeal? Yes, I do, Your Honor. We'll give you three minutes on that. Thank you, Your Honor. Mr. Josepher, you have some rebuttal time, three minutes? Thank you, Your Honor. I really just have a few points. One is on indefiniteness. The policy arguments the counsel made are simply at war with the premise of the entire Novo Industries line of cases, that it is appropriate for courts to correct claims in certain circumstances. And the reason for that is that going back to PTO has real downsides. One, the changes are perspective only, which can significantly shorten the patent term, and would have that effect in this case. And the second is that it leads to an additional multiplicity of proceedings and delay. And that's why this court's case is hold, that when the correction is clear anyway, there's no reason to force a patentee to go back and do that and surrender a significant amount of his patent rights in doing so. And that's true whether the mistake is discovered before or after the suit is filed, because the harms to the patentee would be the same. Second, with respect to the period or semicolon hypo, I don't know what more I need to say about that. I mean, it's clearly the case that under their reading, it's so hyper-technical as to make no sense whatsoever, and is also squarely contrary to all this court's cases, holding the courts can interpret claims in order to correct them, interpret according to the claim language, the specification, the prosecution history, where this court does do the interpretation. And the reason to interpret a claim is obviously to figure out in context, as the court has said, what it means. And finally, with respect to the patent attorney's testimony, the patent attorney's testimony certainly is well cited for the proposition that six or seven years later he didn't remember which of the three wordings he intended, but his testimony is fully consistent with the argument we've been making here today, which is that it doesn't matter for this purpose, because detection and analysis are inevitable if you're going to be determining in any event. Beyond that, I'd be happy to take questions on anything else. Thank you, Mr. Joseph. Mr. Jameson, up to three minutes solely on the cross-field issue. Inequitable or exceptional case. Your Honor, with respect to the exceptional case issue, if this court can reconcile Brooks and LTCH, and the conclusion of this court is that there is still a, there is a subjective bad faith prong to find an exceptional case. Even under Brooks, there is an exception to that rule, and that is absent litigation misconduct. And you've read the briefing in this case. If there's ever been a case where there was litigation misconduct, this is it. When attorneys are accusing their adversary of lying to the court, and we are put through the briefing that we were put through, the district court takes the time that it took to read over 200 pages of briefing, and hundreds and hundreds of email, to figuring out whether or not counsel had been telling the truth to the court, and the answer at the end of all of this, is that everything we said in defending ourselves was absolutely true, and everything that they were saying about us was absolutely false. If that's not litigation misconduct, I don't know what is. With respect to the exceptional case determination, and the even playing field issue on the subjective bad faith aspect of that, isn't it true that in assessing subjective bad faith, you have to look at the context? And in that sense, you can have an even playing field in saying there's a subjective bad faith component, but that the bad faith would be analyzed somewhat differently, because of the different context in which the case is viewed. So my point is that in that sense, our precedent would not be inconsistent, and there wouldn't be any issue. Your Honor, if there is a subjective bad faith problem, at a minimum, there has to be a should have known aspect to that. And when you look at the record evidence in this case, the should have known began in 2002, when they sent letters to Cisco characterizing the patent accurately, that was absolutely consistent with the ultimate outcome of the case on the 114 patent. They knew what they were getting into in 2002, they knew what they were getting into in 2004, and the only thing that we have countering that is an affidavit on the case is closed, an exceptional case hearing, where the lawyer that brought the case swears to the legal conclusion I did an adequate pre-filing investigation. And if that can get you past the subjective bad faith prong every single time, then 285 has no teeth with respect to a prevailing defendant. Thank you, Your Honor. Thank you, Mr. Jamieson. The case will be taken under advisement.